UNITED STATES of America,
Plaintiff–Appellee,

v.

Dracy Lamont McKNEELY, also known
as Green Eyes, Defendant–Appellant.

No. 94–1158.

United States Court of Appeals,
Tenth Circuit.

Nov. 6, 1995.

Rehearing Denied Dec. 5, 1995.

Jeralyn E. Merritt, Denver, Colorado, for Defendant–Appellant.

John M. Hutchins, Assistant U.S. Attorney (Henry L. Solano, United States Attorney, District of Colorado, and Daniel J. Cassidy, Assistant U.S. Attorney, with him on the brief), Denver, Colorado, for Plaintiff–Appellee.

Before TACHA, LOGAN and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Defendant Dracy Lamont McKneely appeals from his conviction after jury trial and his sentence for possession with intent to distribute fifty grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii) and 18 U.S.C. § 2. On appeal he asserts that the district court erred in (1) denying his motion for judgment of acquittal based on insufficiency of the evidence (or for new trial on newly discovered evidence); (2) admitting audio and video tapes into evidence without (a) inquiring whether the consent to the recordings by the government's cooperating informant was knowing or voluntary and (b) determining whether the tapes contained inadmissible hearsay statements; (3) striking defense witness Shawn Mazique's trial testimony and/or failing to grant a mistrial; (4) denying defendant's motion for a continuance; (5) refusing his tendered jury instruction on aiding and abetting a crime; and (6) calculating his sentence under the sentencing guidelines. Defendant also asserts that (7) his trial counsel was constitutionally ineffective; (8) the cumulative effects of trial court errors and/or acts and omissions of trial counsel deprived him of a fair trial; (9) the penalties provided for cocaine base violate defendant's constitutional rights to equal protection and due process under the law or amount to cruel and unusual punishment; and (10) the life sentence imposed on him constitutes cruel and unusual punishment or violates his right to equal protection under the law.

Defendant was indicted on two counts: (1) that between November 1, 1991, and February 13, 1992, he and others known and unknown, including Tyrone Day and Shawn

Mazique, conspired to possess with intent to distribute fifty grams or more of cocaine base, and (2) that on February 13, 1992, he possessed with intent to distribute approximately 251 grams of cocaine base. At defendant's request the conspiracy count was severed from the possession count with the latter count to be tried first. After his conviction for possession with intent to distribute, defendant was sentenced to life in prison. Defendant appeals that conviction and sentence.

## I

### Facts

On February 13, 1992, Denver police detectives Jerry Snow and Dennis Petersohn, assigned to the Denver Stapleton Airport narcotics unit, intercepted and arrested Charlene Gross as she arrived in Denver. She had on her person 251 grams of crack cocaine. Gross decided to cooperate with the officers to help them apprehend others involved in the drug transaction. The detectives arranged to meet Special Agent Michael Pope of the Drug Enforcement Administration at a hotel where they set up audio and video receiving equipment to record Gross as she met her contacts.

Agent Pope told Gross to call her source in California (from whence she flew); she called a number that had been written on her airline ticket folder, using the Los Angeles area code. She reached a man she knew as "Green Eyes," whom she later identified in court as defendant McKneely.[1] Defendant gave her two pager numbers, including one for "Tyrone," and told her to page them at nine o'clock. Gross asked defendant about money to get home and he replied in part: "Just make, as soon as they make two thousand, you being [sic] me two thousand back. You know what I'm saying." Gov't.Ex. 5 at 2. Defendant told her to page him as soon as "y'all get together," and to "leave that shit there in the room." *Id.*

Gross called one of the pager numbers, and about an hour later two men, later iden-

tified as Tyrone Day and Shawn Mazique, arrived at Gross' hotel room. She let them in the room and laid down on the bed next to the crack cocaine. The video tape shows Gross, Day and Mazique discussing the distribution of the cocaine and how much to sell it for. There are several references to "Dracy" including: [Mazique] "I was the first one to do anything for Dracy [unintelligible] here." Gov't Ex. 7 at 4. [Mazique] "Dracy make triple out here what he make up there," *id.* at 6; [Day or Mazique] "I thought Dracy bought the shit," *id.* at 7; and [Mazique] "Tell Dracy when you get back I say to go [expletive]. Leave me out here stranded," *id.* at 1.

Day told Gross that he was calling long distance to Dracy Day began the conversation by saying "Hello, Dracy there? What's up man? Hey." *Id.* at 6. Day then said "Charlene ain't got no money on her. We ain't got no money," Ex. 7 at 6, and "it's gonna take a meeting." *Id.* at 6. Day spoke then about getting a scale, weighing it, bagging it and getting rid of it, that people were paging him right then. *Id.* at 9. Day, Mazique and Gross discussed leaving and as they exited the room the officers arrested them. Day had a pager and the crack cocaine in his pants pocket.

At trial Gross testified that defendant, whom she then knew only as "Green Eyes," and had known for "maybe a year" before her flight to Denver, had asked her to go to Denver to transport drugs. V R. 42–43. She testified, however, that he was not the person who actually gave her the drugs. She said that she did not remember who gave her the airline ticket, or whether she bought it herself, because she was high on drugs at the time.

## II

### Motion for Judgment of Acquittal or New Trial

### A

Defendant first asserts that the government offered insufficient evidence to

---

1. Defendant gave her a pager number to call, but it was a wrong number and she reached a doctor instead. She then called defendant back.

convict him of aiding and abetting possession of cocaine with intent to distribute. We view the evidence in the light most favorable to the government and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *United States v. Reddeck,* 22 F.3d 1504, 1507 (10th Cir.1994). We must accept the jury's resolution of conflicting evidence and assessment of witness credibility. *United States v. Davis,* 1 F.3d 1014, 1017 (10th Cir.1993).

■■■ "To be guilty of aiding and abetting a crime, the defendant must willfully associate himself with the criminal venture and seek to make it succeed through some action on his part." *United States v. Esparsen,* 930 F.2d 1461, 1470 (10th Cir.1991), *cert. denied,* 502 U.S. 1036, 112 S.Ct. 882, 116 L.Ed.2d 786 (1992). "[P]articipation may be established by circumstantial evidence, and the evidence may be of relatively slight moment." *Id.* (quotations omitted).

Defendant asserts that the government presented two disjunctive theories of aiding and abetting by defendant: one that defendant aided and abetted Gross in her possession of the cocaine with intent to distribute; the other that defendant aided and abetted Mazique's and Day's possession with intent to distribute. Defendant's argument is that once Gross became a government agent she lacked the specific intent to possess cocaine with intent to distribute and therefore defendant could not have aided and abetted her in that crime; thus one of the disjunctive theories was legally impossible, requiring reversal. *See United States v. Self,* 2 F.3d 1071, 1093 (10th Cir.1993) (when the government relies on disjunctive theories and the jury could have based its general verdict on a legally or constitutionally infirm theory, defendant is entitled to reversal). This argument ignores the evidence that defendant initiated Gross' travel to Denver with the cocaine, which is sufficient to show aiding and abetting notwithstanding Gross' testimony that defendant was not the person who actually gave her the drugs she carried to Denver.

Because sufficient evidence supported a finding that defendant aided and abetted Gross, reversal is not called for even if there was insufficient evidence that defendant aided or abetted Mazique or Day. *See United States v. Pace,* 981 F.2d 1123, 1130 (10th Cir.1992) (factual insufficiency of one or more of objects of conspiracy does not require reversal because we assume jury rejected factually inadequate theory), *cert. denied,* —— U.S. ——, 113 S.Ct. 1401, 122 L.Ed.2d 774 (1993). In any event, the government produced evidence that defendant was involved in connecting Day and Mazique with the drug source (through Gross) so that they could then possess the drugs with the intent to distribute them. There was sufficient evidence on which a jury could find that defendant aided and abetted Gross, Day and Mazique.

### B

■■■ Defendant also asserts that count two as it was submitted to the jury charged more than one offense in a single count (e.g., aiding and abetting Gross, or Mazique and Day) and thus was duplicitous. Duplicity, the joining of two or more offenses in one count, creates the possibility that the jury may convict the defendant without unanimously agreeing on guilt for the same offense, *see United States v. Haddock,* 956 F.2d 1534, 1546 (10th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992), and also raises double jeopardy concerns. But "[w]e know of no rule that renders an indictment duplicitous because it charges as one joint offense a single completed transaction instead of charging in separate counts as many offenses as the evidence at trial might conceivably sustain." *Korholz v. United States,* 269 F.2d 897, 901 (10th Cir.1959), *cert. denied,* 361 U.S. 929, 80 S.Ct. 367, 4 L.Ed.2d 352 (1960) (quoting *Mellor v. United States,* 160 F.2d 757, 762 (8th Cir. 1947)); *see also United States v. Papia,* 910 F.2d 1357, 1364 (7th Cir.1990). This is a frivolous argument in the instant case because defendant's role as an aider and abettor as charged clearly was to send Gross to Denver to deliver cocaine to Mazique and Day—a single offense.

## C

Defendant also contends that count two of the indictment was impermissibly vague because it failed to state the identity of the principal whom defendant aided and abetted or caused to possess cocaine base with intent to distribute. However, failure to name in the indictment persons aided and abetted is not a jurisdictional problem. *See United States v. Haddock,* 956 F.2d 1534, 1542 (10th Cir.1992). The defense did not ask for a bill of particulars, therefore it waived any nonjurisdictional, nonconstitutional errors in the indictment. *See United States v. Hubbard,* 603 F.2d 137, 141–42 (10th Cir.1979). Further, count one charged defendant with conspiracy and listed Day and Mazique as coconspirators. Defendant was on notice that he needed to defend against evidence that he aided and abetted Gross, Day and Mazique; thus, there was no violation of defendant's right to be notified of the charges against him, or to plead double jeopardy in a subsequent prosecution based on the same crimes. Defendant's passing assertion that he may have been convicted of an offense not presented to the grand jury is also without merit.

## D

Defendant argues also that the district court erred in denying a new trial based upon Mazique's testimony at Mazique's contempt hearing. We review the district court's denial of a motion for a new trial for abuse of discretion. *United States v. Robinson,* 39 F.3d 1115, 1116 (10th Cir.1994). At his contempt hearing Mazique testified that Day's allegations at trial about defendant had been lies, that a person who used the name "Little Dracy" (because he wanted to emulate defendant) was the source of the drugs that Gross delivered to Denver on February 12, 1992. Defendant asserts that this was new evidence that some other person committed the crime for which he was convicted and that therefore he was entitled to a new trial.

The district court rejected Mazique's testimony in part because Day testified at defendant's sentencing hearing that although he had known defendant for five years he had never heard of a "Little Dracy." Further, Day testified that he had never known Mazique to call anyone "Little Dracy." The district court essentially determined that Mazique's testimony was invented and stated that he was a "known perjurer." *See* VIII R. 48–50. The district court did not abuse its discretion in refusing to grant a new trial based on Mazique's testimony.

## III

### *Admission of Audio and Video Tapes*

### A

Defendant asserts that the district court erred in admitting audio and video tapes into evidence without inquiring whether consent to the recordings by Gross, the government's informant, was knowing or voluntary. We review a district court's determination that consent to record a conversation was voluntary under a clearly erroneous standard. *United States v. Davis,* 1 F.3d 1014, 1016 (10th Cir.1993). Because this issue was not raised below,[2] however, we review for plain error, that is, whether there has been an error that affects the substantial rights of defendant so as to place the fundamental fairness of the trial in question. *See United States v. Young,* 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985).

When the government records a defendant's conversation with another party, pursuant to that party's consent, neither the Fourth Amendment nor 18 U.S.C. § 2511(2)(c) is violated. *See United States v. Tangeman,* 30 F.3d 950, 952 (8th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 532, 130 L.Ed.2d 435 (1994); *see also Davis,* 1 F.3d at 1016. If the defendant raises the question whether the consent was knowing and voluntary, the burden of proof then falls on the government to establish the consent. *See Tangeman,* 30 F.3d at 952. Here defendant did not contest whether Gross' consent was

---

**2.** The government argues that defense counsel did not raise the issue "below because the consent of Ms. Gross to record clearly was demon-

strated or could have been demonstrated." Brief of Appellee at 17.

voluntary and thus there was no reason for the government to present a foundation for introduction of the tapes. Defendant asserts, however, that when Gross testified at trial that on the night she left Los Angeles and flew to Denver she was too high to remember whether or not she purchased her own ticket, the court sua sponte should have inquired into the nature and extent of her impairment to determine if her consent to be recorded was voluntary. We disagree.

Gross' testimony that she was "on drugs and ... high," V R. 44,[3] when she acquired the ticket in Los Angeles does not mean that she could not give a knowing and voluntary consent when she agreed to cooperate after arriving in Denver. The evidence indicates Gross knew that the room was being monitored, indicating her consent. *See United States v. Jones*, 839 F.2d 1041, 1050 (5th Cir.), *cert. denied*, 486 U.S. 1024, 108 S.Ct. 1999, 100 L.Ed.2d 230 (1988). Further, Gross' demeanor on the audio and video tape does not reflect that she was too intoxicated to voluntarily consent to the recording.

### B

▆ Defendant also asserts that the tapes included inadmissible hearsay statements by Mazique and Day, and that admission of the statements violated defendant's Sixth Amendment right to confront witnesses against him. Defendant failed to raise this objection at trial; thus we will reverse only if we find plain error. *See United States v. Langston*, 970 F.2d 692, 705 n. 10 (10th Cir.), *cert. denied* —— U.S. ——, 113 S.Ct. 439, 121 L.Ed.2d 358 (1992).

The government introduced many of the recorded statements of Mazique and Day as direct evidence of the drug transaction by the principals whom defendant was charged with aiding and abetting. Those statements were not offered for the truth of the matter stated, and thus are not hearsay. *See United States v. Inadi*, 475 U.S. 387, 398 n. 11, 106 S.Ct. 1121, 1128 n. 11, 89 L.Ed.2d 390 (1986) ("[M]any co-conspirator statements are not introduced to prove the truth of the matter asserted, and thus do not come within

the traditional definition of hearsay, even without the special exemption of Federal Rule of Evidence 801(d)(2)(E)."). Further, statements such as "Dracy bought the shit," *see* Gov't Ex. 7 at 7, would be admissible under Fed.R.Evid. 801(d)(2)(E) if determined by the trial court to be statements by coconspirators in the furtherance of the conspiracy. Of course, because there was no hearsay objection the district court did not make the findings contemplated by Rule 801(d)(2)(E). *See United States v. Perez*, 989 F.2d 1574, 1577, 1580 (10th Cir.1993) ("must be evidence that there was a conspiracy involving the declarant and the nonoffering party, and that the statement was made 'during the course and in furtherance of the conspiracy' ") (quoting *Bourjaily v. United States*, 483 U.S. 171, 175, 107 S.Ct. 2775, 2778, 97 L.Ed.2d 144 (1987)).

The record shows, however, that the statements that were admitted for the truth of the matter meet the coconspirator exception. Gross, Mazique and Day were convicted of drug crimes in relation to this transaction. Gross testified that defendant requested that she fly to Denver to make the drug delivery, and that he provided her with the beeper numbers to contact Day and Mazique, thus facilitating their possession with intent to distribute the cocaine. Thus the record strongly supports a finding that Gross, Mazique and Day were coconspirators with defendant. Under these circumstances admission of the tapes, which recorded the transactions to which Gross testified, was not plain error. On this record, we will not remand to the district court to make Rule 801(d)(2) findings never requested.

### IV

#### *Striking Testimony of Defense Witness Mazique*

▆ Defendant next argues that the district court should not have struck defense witness Mazique's trial testimony (or in the alternative should have ordered a mistrial) after Mazique refused to answer a cross-

---

**3.** The court may have concluded that Gross' testimony that she was intoxicated was an attempt by a reluctant witness to explain supposed recollection problems.

examination question. Defendant asserts that striking Mazique's testimony violated his Sixth Amendment right to call witnesses in his defense. Generally we review for abuse of discretion the district court's decision to strike testimony because of restricted cross-examination. *See Esparsen,* 930 F.2d at 1469. Here, because defendant did not raise this issue at trial we review for plain error. *See Young,* 470 U.S. at 6–7, 105 S.Ct. at 1041–42; Fed.R.Crim.P. 52(b).

Courts have balanced [the right to present witnesses with the goal of reaching the truth through cross-examination] by drawing a line between direct and collateral matters. A defendant cannot invoke due process or compulsory process rights to immunize his witnesses from cross-examination on issues relevant to the truth of the direct testimony. For instance, the Fourth Circuit struck a defense witness's testimony that the defendant was not with him on a certain night when the witness refused to answer specific questions about what he was doing that night. When the refusal to answer cross-examination questions involves collateral matters, we have held in the analogous situation of a prosecution witness who invokes the Fifth Amendment that the testimony should not be struck. *United States v. Nunez,* 668 F.2d 1116, 1122 (10th Cir.1981).

*Esparsen,* 930 F.2d at 1469–70 (some citations omitted).

Mazique was convicted for his involvement in this drug offense before defendant's trial, and he had received a fourteen-year sentence. During Mazique's direct testimony the following exchange took place:

Q. Did Mr. McKneely have any involvement in this transaction? Was he the source of that substance?

THE COURT: Which question do you want him to answer?

[Defense Attorney] The last question first.

Q. Was Mr. McKneely the source of that crack cocaine?

A. No.

Q. Did he have any involvement in it?

A. No.

V R. 65. The government then cross-examined Mazique:

[Government attorney] Q. Who was the source of the crack cocaine?

A. I don't know.

Q. You don't know?

A. No, I don't know.

Q. Are you the same Shawn Curtis Mazique that was convicted on January 31, 1990, of receiving stolen property in the State of California?

A. Yes.

Q. The same Shawn Curtis Mazique that was convicted in this courtroom on April 8, 1992 of possession with intent to distribute crack cocaine?

A. Yes.

Q. On February 13, 1992, what were you doing for a living?

A. Excuse me?

Q. What were you doing to make money to support yourself on February 13?

A. I was a drug dealer.

Q. How long were you a drug dealer?

A. For a couple of months.

Q. Couple of months here in Colorado?

A. Yes.

Q. Before that you lived in California, didn't you?

A. Yes.

Q. Were you a drug dealer in California?

A. Yes.

Q. How long were you a drug dealer in California?

A. A couple of weeks before I came out here.

Q. Who were you working for in California?

A. I am not going to just drop names for you now I am [not] going to tell you that now.

THE COURT: Answer the question.

THE WITNESS: Can I just—

THE COURT: Just answer—

THE WITNESS: The person that I was getting my drugs from, he ain't in this courtroom.

THE COURT: You answer the question, Mr. Mazique.

THE WITNESS: That's the only way I can answer the question without putting somebody's name in traffic.

THE COURT: Answer the question. Members of the jury, I am going to excuse you for a few minutes. Please go to the jury room.

V R. 65–67.

The court told Mazique that if he did not answer the question he would be found in contempt and placed in jail. Mazique stated he understood but refused to answer. The district court found him in contempt. The prosecutor requested that Mazique's testimony be struck because the government did not have a full opportunity to cross-examine him. The district court then instructed the jury that Mazique had refused to answer questions on cross-examination and therefore his testimony should be entirely disregarded.

Mazique's drug source when he was dealing in California is collateral to the matter at issue here, and Mazique had a Fifth Amendment right, if claimed, not to answer that specific question. That portion of the questioning could be struck on relevancy grounds. The issue is whether the portion of Mazique's testimony that declared defendant had no involvement in the cocaine transaction in Colorado could be struck from the jury's consideration.

■■■ Striking the testimony of a witness is a drastic remedy not lightly invoked. *Lawson v. Murray,* 837 F.2d 653, 656 (4th Cir.), *cert. denied,* 488 U.S. 831, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988). However, "[s]triking all of the testimony of the witness may be the only appropriate remedy when refusal to answer the questions of the cross-examiner frustrates the purpose of the process." *Id.* In *United States v. Negrete–Gonzales,* 966 F.2d 1277 (9th Cir.1992), the court held improper the striking of testimony by a witness who refused to identify her source of cocaine on cross-examination after she had testified on direct that two defendants were not involved in an attempted cocaine sale. But there neither defendant was charged with supplying the cocaine and the identity of the

source of the drugs was collateral to the witness' direct testimony. In the instant case the identity of the source was central to the issue of defendant's guilt or innocence. When the prosecutor twice asked "who was the source of the crack cocaine" Mazique twice responded "I don't know." This case is similar to *Lawson,* which upheld striking the testimony of a witness who invoked the Fifth Amendment after giving brief exculpatory testimony. The witness

> was clearly attempting to say just enough to exonerate [defendant] without implicating himself. In the process, he was trifling with the truth, as the prosecutor well knew, because [the witness] had been caught in the act of fleeing from the scene in the presence of the red Mercury automobile. The prosecutor was entitled to closely examine the witness in that area and thus to expose to the fact finder [the witness'] falsification. [The witness'] refusal to answer questions so relevant and pertinent left the trial judge with no alternative but to strike [the] entire testimony.

*Lawson,* 837 F.2d at 656.

■■■ "The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system; one cannot invoke the Sixth Amendment as a justification for presenting what might have been a half-truth." *Taylor v. Illinois,* 484 U.S. 400, 412–13, 108 S.Ct. 646, 655, 98 L.Ed.2d 798 (1988) (citing *United States v. Nobles,* 422 U.S. 225, 241, 95 S.Ct. 2160, 2171, 45 L.Ed.2d 141 (1975)). Mazique's answers were nonresponsive and prevented the prosecution from effectively cross-examining him. During direct examination Mazique had denied that defendant supplied the drugs at issue without naming the source; the government on cross-examination was obviously attempting to test that assertion. We hold that the court did not err in striking the testimony.

## V

### *Motion to Continue the Trial*

■■■ Defendant contends that the district court erred in denying his motion to continue the trial. We review denial of a

motion to continue for abuse of discretion, assigning error only if the district court's decision was "arbitrary or unreasonable and materially prejudiced the [defendant]." *United States v. Rivera*, 900 F.2d 1462, 1475 (10th Cir.1990) (quotations omitted).

Ten days before the trial date, defendant sought a continuance because his retained counsel had that day entered an appearance on his behalf replacing defendant's appointed counsel. In his motion and at the hearing, defendant stated he needed the continuance to secure the appearance of Gross and Mazique and to file additional pretrial motions. He also sought time to locate two potential defense witnesses who could testify that the two thousand dollars discussed by Gross and defendant was to pay for car repairs defendant made, not for drugs. In denying the motion the district court noted that it was not a complex case and stated that the issue could be revisited if needed. At the trial preparation conference defense counsel renewed the motion, in conjunction with a motion to sever, arguing that he needed more time to prepare for the conspiracy charge. The court granted the motion to sever but again denied the motion to continue.

Defendant now argues he had insufficient time to prepare a defense, to prepare for his own testimony, to investigate and prepare a challenge to the uncharged conduct considered at sentencing, and that denial of the continuance had a chilling effect on his constitutional right to testify on his own behalf. We disagree. After severance of the conspiracy charge this was a relatively simple trial; it lasted only one day. Defense counsel had previously represented defendant in a drug case in Utah at the time he entered his appearance in this case; thus they had an established attorney-client relationship. Counsel was familiar with the cocaine seized and used in the Utah trial, and that was relied upon here as relevant evidence of quantity. Mazique and Day had already been convicted, were in prison and available. Also, defendant could have provided counsel with the information needed to determine whether he should take the stand.

The only potential for prejudice was defendant's inability to provide witnesses who could testify that the two thousand dollars mentioned in the taped telephone conversation was a legitimate debt. But even if defendant could have shown it was a legitimate debt, that would not have effectively rebutted the evidence, including the video and audio tape and Gross' testimony, that defendant was involved in the substantive offense. *Cf. United States v. Wynne*, 993 F.2d 760, 767 (10th Cir.1993) (upholding denial of continuance where conviction did not hinge on whether defendant had used marijuana). We cannot conclude that defendant suffered material prejudice warranting reversal of his conviction.

## VI

### Jury Instruction on Aiding and Abetting

 Defendant argues that the district court erred in refusing to give a jury instruction tendered by defendant. We review the sufficiency of the district court's instructions to the jury de novo, *United States v. Barrera–Gonzales*, 952 F.2d 1269, 1271 (10th Cir.1992), viewing the instructions in their entirety. *United States v. Reddeck*, 22 F.3d 1504, 1510 (10th Cir.1994). We will reverse if the law is incorrectly stated and the error is prejudicial in light of the entire record. *See id.*

Defendant's tendered instruction was an edited version of a "mere presence" instruction on aiding and abetting.

> Mere similarity of conduct among various persons and the fact they may have associated with each other, and may have assembled together and discussed common aims and interests does not establish that a defendant aided or abetted in the commission of crime, even though he may have been aware that a crime was being committed.

I Supp.R. doc. 1. In refusing it, the district court stated that language concerning mere presence would be confusing to the jury because there was no evidence that defendant was present during the transaction at issue here.

On appeal defendant argues that he was entitled to an instruction on his theory of the case, in particular that merely acting in the

same way as others or merely associating with others does not prove aiding and abetting. *See United States v. Jerde,* 841 F.2d 818, 820, 823 (8th Cir.1988) (a defendant is entitled to have a theory of the case instruction given to the jury if it correctly states the law and is supported by the evidence). The aiding and abetting instruction given by the district court stated:

> For you to find a defendant guilty as an aider and abettor, you must be satisfied beyond a reasonable doubt that the defendant intentionally associated himself with the criminal venture, that he participated in it as something that he wished to bring about, that he seek by his action to make it succeed.
>
> If you are convinced that the Government has proved all three elements of aiding and abetting a crime charged in the indictment, say so by returning a guilty verdict on that charge. If you have a reasonable doubt about any one of these elements, then you cannot find a defendant guilty as an aider and abettor.

I Supp.R. doc. 2 at 37. This instruction correctly stated the law and adequately covered the issue of whether defendant intentionally associated himself with the criminal venture. The district court's refusal to give the requested instruction did not impair defendant's ability to present his defense.

## VII

### *Sentencing Guidelines Calculations*

■■■ Defendant asserts the district court erred in calculating his sentence under the sentencing guidelines. Defendant objected to the sentencing calculations in his response to the presentence report and also at the sentencing hearing. Factual determinations relevant to sentencing such as drug quantities must be proven by a preponderance of the evidence. *United States v. Cook,* 949 F.2d 289, 295–96 (10th Cir.1991), *modified on other grounds,* 997 F.2d 1312 (1993). We review the district court's factual findings regarding defendant's role in the offense, the quantity of drugs as relevant conduct, and the criminal history category for clear error. *United States v. Melendez–Garcia,* 28 F.3d 1046, 1056 (10th Cir.1994); *United States v.*

*McIntyre,* 997 F.2d 687, 710 (10th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 736, 126 L.Ed.2d 699 (1994). We review the application of sentencing guidelines and underlying constitutional challenges de novo.

### A

■■■ Defendant argues that the district court erred in increasing his relevant conduct by four kilograms and one pound of cocaine base. The four kilogram increase was based on testimony by Day that over the four-month period in which he worked for defendant he distributed about a kilogram of cocaine a month. The one pound increase was based on a Utah traffic stop in which a Utah deputy sheriff seized a pound of cocaine base and a firearm from the glove compartment of a vehicle defendant rented and in which he was a front seat passenger.

■■■ Defendant asserts that Day's testimony should have been held to a higher standard of proof than preponderance of the evidence because Day invoked his Fifth Amendment privilege and did not testify at defendant's trial. But it is well settled that factual determinations relevant to sentencing must only be proven by a preponderance of the evidence. The district court was not manifestly unfair in applying this standard to Day's testimony. *Cook,* 949 F.2d at 295–96. Defendant also argues that the district court did not justify granting more credence to Day's testimony than that of Mazique and Gross, who both testified that defendant was not the source of the cocaine in the February 13 transaction. Although credibility problems exist with all three witnesses, in sentencing proceedings we defer to the district court's evaluation of witness credibility. *Id.*

■■■ Defendant asserts that the pound of cocaine base seized in Utah was not part of the same course of conduct as the offense of conviction, *see* U.S.S.G. § 1B1.3, and that the evidence did not establish a link between him and the cocaine. Although the Utah incident occurred four months after the offense of conviction, defendant apparently was on his way to Denver with cocaine base—thus driving to the same city with the same type of drug that formed the basis of the offense for

which he was convicted. *See United States v. Roederer*, 11 F.3d 973, 978–79 (10th Cir. 1993) (considering similarity, regularity and temporal proximity of conduct). Defendant also argues that he did not have access to the glove box containing the cocaine, but clearly the district judge did not find this credible. The district court's determination that the cocaine seized in Utah was involved in the same course of conduct as the offense of conviction was not clearly erroneous.

### B

█ Defendant next contends that the district court erred in increasing his offense level for possession of a gun in the Utah offense. The court stated that "the evidence connecting [defendant] with the gun is simply that the gun was in the car within reach of the people who would be in the front seat of the car." VIII R. 59. Defendant points out that the glove compartment was locked, the arresting officer did not find the key when he searched the occupants, and another car occupant claimed ownership of the gun. Thus, defendant argues there was insufficient evidence to link him to this weapon or to find that it was accessible to him. Defendant, however, had rented the car, was a front seat passenger, and the gun had been stolen. Our review of the record indicates that the district court's determination that defendant was in possession of the gun was not clearly erroneous.

### C

█ Defendant asserts that the district court clearly erred in increasing his offense level two points for a managerial or supervisory role under U.S.S.G. § 3B1.1(c). Defendant argues that he was not the source of cocaine,[4] and that he simply provided Gross the pager numbers to contact Mazique and Day. Although Gross testified that she owed defendant money for repairing her vehicle and that defendant provided the pager numbers to encourage her to get money to pay him back, the judge apparently discounted this portion of her testimony. The district

court had before it ample evidence that defendant supervised three participants— Gross, Day and Mazique. The district court did not err in increasing defendant's offense level by two points for his role in the offense.

### D

Defendant maintains the district court erred in refusing to find that his criminal history category significantly overrepresented the seriousness of his criminal history under U.S.S.G. § 4A1.3. He concedes that if we conclude that defendant's offense level was forty-two, as found by the court, then the adjustment sought would make no difference. We have found that the district court did not err in determining defendant's offense level of forty-two, thus we need not address this issue further. *See* U.S.S.G. chapter 5, part A.

█ Defendant also argues that the district court committed clear error in refusing to depart downward. Because the record reflects that the district court was aware of its discretionary power to depart downward we lack jurisdiction to review its refusal to do so. *See United States v. Nelson*, 54 F.3d 1540, 1544 (10th Cir.1995).

### VIII

*Ineffective Assistance of Trial Counsel*

█ Defendant argues that he received constitutionally ineffective assistance of counsel at trial because of counsel's failures to object (1) to admission of audio and video tapes on the ground that any purported consent was not knowing or voluntary; (2) to taped statements of Day and Mazique as hearsay; and (3) to striking Mazique's testimony and advising Mazique of the consequences of his testimony.

We recently strengthened the general rule that "claims of constitutionally ineffective counsel should be brought on collateral review, in the first petition filed under 28 U.S.C. § 2255." *United States v. Galloway*, 56 F.3d 1239, 1242 (10th Cir.1995) (holding

---

**4.** Defendant also argues there was no evidence of his role in the Utah case. But "the defendant's role is considered only in relation to the offense of conviction, we do not look at all relevant conduct." *United States v. Reid*, 911 F.2d 1456, 1464 (10th Cir.1990).

that ineffectiveness claims that could have been brought on direct appeal, as well as those that were brought on direct appeal, are not procedurally barred in habeas proceeding, if in the latter instance "new grounds are advanced in support of that claim"). Some rare claims which are fully developed in the record may be brought on direct appeal. *Id.* Here defendant's brief states that he is not raising other ineffectiveness issues such as failure to investigate and call witnesses and effective cross-examination at sentencing because those issues will certainly require additional evidentiary records. *See* Defendant's Appellant's Amended Opening Brief at 44 n. 1. Under these circumstances we decline to address defendant's claims of ineffective trial counsel on direct appeal. *See Galloway,* 56 F.3d at 1242.

## IX

### *Cumulative Errors*

 Defendant next asserts that the effect of numerous cumulative nonreversible trial errors cannot be considered harmless. We evaluate whether cumulative errors were harmless by determining whether defendant's substantial rights were affected. *See Rivera,* 900 F.2d at 1470. Because we identified no error in this case there is no basis for a cumulative error determination. *See, e.g., United States v. McIntyre,* 997 F.2d 687, 709 (10th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 736, 126 L.Ed.2d 699 (1994).

## X

### *Penalty for Cocaine Base*

Defendant acknowledges that we have rejected challenges to the penalty scheme for offenses involving cocaine base focusing on the harsher sentences for cocaine base than for cocaine powder. *See United States v. Easter,* 981 F.2d 1549, 1558–59 (10th Cir. 1992), *cert. denied,* — U.S. —, 113 S.Ct. 2448, 124 L.Ed.2d 665 (1993). We have held that a rational basis exists for harsher sentences for cocaine base, *United States v. Thurmond,* 7 F.3d 947, 951–53 (10th Cir. 1993), *cert. denied,* — U.S. —, 114 S.Ct. 1311, 127 L.Ed.2d 661 (1994), and that the

statute is not race-based. *Id.; United States v. Easter,* 981 F.2d at 1558–59.

## XI

### *Challenge to Life Sentence*

 Defendant argues for the first time on appeal that his life sentence constitutes cruel and unusual punishment or violates his right to equal protection under the law. Although defendant acknowledges that the Supreme Court has held that life imprisonment for possession of cocaine does not constitute cruel and unusual punishment, *see Harmelin v. Michigan,* 501 U.S. 957, 111 S.Ct. 2680, 115 L.Ed.2d 836 (1991), he asks us to determine that under evolving standards of decency the imposition of this punishment, particularly because this is his first felony conviction, is cruel and unusual. The Supreme Court's recent decision in *Harmelin,* however, is binding. *See id.* (fact that state law did not provide for consideration of mitigating factors, including that this was the petitioner's first felony, did not render mandatory life sentence for cocaine possesssion "unusual" punishment).

 Defendant also argues the district court erred because it imposed the sentence based on general deterrence rather than individual factors. *See United States v. Barker,* 771 F.2d 1362, 1368–69 (9th Cir.1985) (reversing for resentencing because "district court's imposition of sentence was motivated by the desire for general deterrence to the exclusion of adequate consideration of individual factors"). Although the court did refer to general deterrence, the judge clearly relied on other factors:

> The reason for imposing that sentence is because I regard this as a very serious case and probably only the tip of the iceberg.
>
> You have been in the crack distribution business as nearly as I can see for quite a few years. Mr. Day testified for about five years or he testified that he'd known you for five years, I'm sorry. He suggested that he was selling, as he put it, dope for you in California. You came to Colorado to sell dope here. I would like to discour-

age that kind of activity from anybody in California who's thinking about it.

For those reasons, for the purpose of deterring other people generally, for the purpose of deterring you, specifically, that's the sentence that's imposed.

In addition—[The court was interrupted at this time by an emotional and extended verbal outburst by defendant.]

VIII R. 62.

Although it is tragic for a twenty-three-year-old to spend the rest of his life in prison, Congress has provided this penalty for drug crimes involving large quantities of cocaine. We must follow the law.

AFFIRMED.