**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 8 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

GABRIELA PENA-HERNANDEZ,

      Defendant-Appellant.

No. 98-2057
(D.C. No. CR-97-129-HB)
(D.N.M.)

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

ALEJANDRINA PENA,

      Defendant-Appellant.

No. 98-2058
(D.C. No. CR-97-129-HB)
(D.N.M.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BALDOCK**, **HENRY**, and **LUCERO**, Circuit Judges.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

A jury convicted Defendants Gabriela Pena-Hernandez and Alejandrina Pena of possession with intent to distribute more than 100 kilograms of marijuana in violation of 21 U.S.C. § 841(a)(1). The district court sentenced each Defendant to sixty-three months imprisonment and four years supervised release. On appeal, both Defendants challenge the district court's denial of their motion to suppress evidence uncovered during a roving border patrol agent's purportedly unconstitutional stop of a vehicle driven by Defendant Pena-Hernandez. Defendant Alejandrina Pena, a passenger in the vehicle, also challenges the district court's denial of her motion for judgment of acquittal based upon insufficiency of the evidence. Our jurisdiction arises under 28 U.S.C. § 1291. We affirm.

I.

Well established standards govern our review of a district court's denial of a motion to suppress. Considering the evidence in a light most favorable to the government, we accept the district court's factual findings unless those findings are clearly erroneous. United States v. Anderson, 114 F.3d 1059, 1063 (10th Cir. 1997). The district court's determination of reasonableness under the Fourth Amendment, however, is a question of law reviewable de novo. United States v. Barron-Cabrera, 119 F.3d 1454, 1457 (10th Cir. 1997).

In a thorough Memorandum Opinion and Order the district court made factual findings on Defendants' motion to suppress which are consistent with our review of the record. The transcript of the suppression hearing reveals that around 1:00 p.m. on

January 22, 1997, Agent Joe Muniz, a nine year veteran of the border patrol, was patrolling New Mexico Highway 9, between Santa Teresa and Columbus, New Mexico. Highway 9, also known as Anapra Road, parallels the international boundary approximately three miles north of Mexico. Agent Muniz testified that Highway 9 is a frequent smuggling corridor for both drugs and illegal aliens due to its location and desolation.

Agent Muniz observed two Hispanic women in a maroon GMC van with Texas license plates. Agent Muniz decided to follow the van because: (1) the van was not a local vehicle; (2) smugglers often utilize vans; and (3) the border patrol was conducting enhanced, twenty-four hour checkpoint operations on I-10, I-25, and New Mexico Highway 185, which are the most frequently traveled and accessible routes in that area. The van turned north off Highway 9 onto New Mexico Highway 11 and stopped momentarily at a gas station in Columbus. Agent Muniz proceeded north on Highway 11 and parked at mile marker 6, two miles north of Columbus.

Agent Muniz requested vehicle registration and seventy-two hour port-of-entry checks on the van. The checks indicated that the van was registered to Julian Silva of El Paso, Texas. The records showed that the van had crossed into El Paso, Texas, from Mexico the previous day at 7:05 p.m. Agent Muniz testified that he believed if the van proceeded north from Columbus, its next destination would be Deming, New Mexico. The shortest, most convenient route between El Paso and Deming, however, was I-10.

3

Thus, when the van traveled north from Columbus, Agent Muniz suspected the van's occupants were attempting to circumvent the I-10 checkpoint. Agent Muniz again began following the van when he experienced transmission problems with his vehicle.

Agent Muniz radioed Agent Robert Velez, a ten-year veteran of the border patrol, who was in the immediate area. Agent Muniz informed Agent Velez of his observations and requested Velez' assistance. Agent Velez subsequently pursued the van and stopped it at mile marker 15 on Highway 11 around 1:20 p.m. Agent Muniz arrived on the scene two to three minutes later. In the meantime, Agent Velez determined that the two adult females in the van were legally in the United States.

Agent Velez asked the driver, Defendant Pena-Hernandez, if she would open the van's sliding, passenger-side door so he could look inside. Defendant Pena-Hernandez consented and opened the door. Agent Velez saw three young children inside the van and detected the odor of laundry detergent, a known masking agent for drugs. Agent Velez asked the Defendants what they were doing in the area. Defendant Pena-Hernandez responded that they were looking for her mother who had phoned the night before and told Pena-Hernandez she was having car trouble in the vicinity.

Agent Velez requested and received consent from Defendant Pena-Hernandez to perform a canine sniff on the van. When the dog alerted, Agents Muniz and Velez searched the van and found a false compartment below the van's floorboard. The agents uncovered over 340 pounds of marijuana in the compartment. At that point, the agents

arrested Defendants.

Enumerable cases have addressed the question of when a roving border patrol agent may stop a vehicle without running afoul of the Fourth Amendment. In United States v. Cantu, 87 F.3d 1118, 1121 (10th Cir. 1996), we summarized the case law as follows:

> Border patrol agents on roving patrol may stop vehicles only if they are aware of specific articulable facts, together with rational inferences from those facts, that reasonably warrant suspicion that those vehicles' occupants may be involved in criminal activity. Any number of factors might contribute to an agent's decision to stop a vehicle on reasonable suspicion. The law does not specify a minimum number of factors necessary to constitute reasonable suspicion or any outcome determinative criteria. In all instances, however, the agent is entitled to assess the facts in light of his experience in detecting criminal activity. Law enforcement officers may perceive meaning in actions that appear innocuous to the untrained observer. This is not to say that an agent may stop a vehicle on an unparticularized suspicion or hunch. While the necessary level of suspicion is considerably less than proof of wrongdoing by a preponderance of the evidence, the Fourth Amendment requires some minimal level of objective justification.

(internal citations and quotations omitted).

In determining whether a roving border patrol agent has reasonable suspicion to stop a vehicle, we look at the totality of the circumstances. United States v. Cortez, 449 U.S. 411, 417 (1981). In United States v. Brignoni-Ponce, 422 U.S. 873, 884-85 (1975), the Supreme Court set forth a non-exhaustive, multi-factor test which guides our inquiry. Factors which a roving border patrol agent may consider include: (1) the characteristics of the area in which the vehicle is encountered; (2) the proximity of the area to the border;

5

(3) the usual pattern of traffic on the particular road; (4) the previous experience of the agent with traffic in the area; (5) the driver's behavior; (6) information about recent illegal activity in the area; and (7) characteristics of the vehicle. Id.

Defendants argue that Agent Velez' stop of the van was not based on reasonable suspicion, but rather a hunch.[1] The district court held, however, that the facts known to Agents Muniz and relayed to Velez at the time of the stop made their suspicion that the van was involved in criminal activity quite reasonable. We agree with the able analysis of the district court set forth in its Memorandum Opinion and Order:

> Agents Muniz and Velez had specific articulable facts that reasonably warranted suspicion that the van was involved in criminal activity. The agents stopped the vehicle close to the border. The van was the type of vehicle frequently used for smuggling and was stopped in an area notorious for smuggling activity. Agent Muniz was familiar with the traffic patterns in the area and knew the . . . [I-10, I-25, and NM 185] checkpoints were being manned twenty-four hours a day and thus suspected the van was

---

[1] Defendant Pena as a passenger in the van likely has no standing to directly contest the search of the van. See Rakas v. Illinois, 439 U.S. 128, 148-49 (1978) (passenger who asserts neither a possessory nor a property interest in a vehicle has no legitimate expectation of privacy in the vehicle worthy of Fourth Amendment protection). Defendant Pena, however, does have standing to challenge the stop of the van, which resulted in her detention. As we stated in United States v. Shareef, 100 F.3d 1491, 1500 (10th Cir. 1996):

> We distinguish passenger standing to directly challenge a vehicle search from passenger standing to seek suppression of evidence discovered in a vehicle as the fruit of an unlawful stop, detention, or arrest. If the physical evidence found in the vehicle was the fruit of the defendants' unlawful detention, it must be suppressed.

(internal citations and quotations omitted).

6

attempting to circumvent the checkpoints. Moreover, the vehicle registration and 72 hour port-of-entry lane check indicated the vehicle had been in Mexico the previous night and was owned by someone other than the driver. After Agent Muniz observed the van traveling north toward Deming, his suspicions were further aroused because the shortest and safest route to Deming from El Paso is I-10, the main interstate. For the foregoing reasons, the Court finds that Agent Velez had "specific articulable facts" which together with "rational inferences" warranted a stop of defendants. Once Agent Velez smelled the masking odor he asked and received consent to do a canine search [on] the vehicle. Defendants have not alleged the consent was involuntary. After the dog alerted, [and the marijuana located] the agents had probable cause to arrest defendants.

Accordingly, the district court properly denied Defendants' motion to suppress.

II.

As previously stated, only Defendant Pena challenges the sufficiency of the evidence against her. Defendant Pena, a passenger in the van, asserts that the government offered insufficient evidence at trial to prove beyond a reasonable doubt that she knowingly and intentionally possessed the marijuana discovered in the van with an intent to distribute. We review de novo the district court's determination that sufficient evidence existed to support Defendant Pena's conviction. United States v. McDermott, 64 F.3d 1448, 1457 (10th Cir. 1995). In challenging the sufficiency of the evidence, "defendants are faced with a high hurdle." United States v. Voss, 82 F.3d 1521, 1524 (10th Cir. 1996). We view the evidence, both direct and circumstantial, together with the reasonable inferences to be drawn therefrom, in a light most favorable to the government to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Jones, 44 F.3d 860, 864 (10th Cir.

7

1995).  While "we may not uphold a conviction obtained by piling inference upon inference," United States v. Valadez-Gallegos, 162 F.3d 1256, 1262 (10th Cir. 1998), a "jury may draw reasonable inferences from . . . circumstantial evidence."  United States v. Yoakam, 116 F.3d 1346, 1349 (10th Cir. 1997).

In this case, the indictment charged Defendant Pena with the substantive offense of possession with intent to distribute a controlled substance in violation of 18 U.S.C. § 841(a)(1), and with aiding and abetting in violation of 18 U.S.C. § 2.  To sustain a conviction under § 841(a)(1), the government must prove that Defendant (1) possessed a controlled substance, (2) knew she possessed a controlled substance, and (3) intended to distribute a controlled substance.  United States v. Mains, 33 F.3d 1222, 1228 (10th Cir. 1994).  Possession of a controlled substance may be either actual or constructive.  Constructive possession occurs when a person "knowingly has ownership, dominion or control over the . . . [drugs] and the premises where the . . . [drugs] were found."  United States v. Hagar, 969 F.2d 883, 888 (10th Cir. 1992).

To be guilty of aiding and abetting the commission of a crime under 18 U.S.C. § 2, Defendant Pena must have willfully associated herself with the criminal venture and sought to make the venture succeed through some action of her own.  United States v. McKneely, 69 F.3d 1067, 1072 (10th Cir. 1995).  "Participation in the criminal venture may be established by circumstantial evidence and the level of participation may be of relatively slight moment."  United States v. Leos-Quijada, 107 F.3d 786, 794 (10th Cir.

8

1997). The question we must answer is whether the government presented evidence upon which a reasonable jury could conclude beyond a reasonable doubt that Defendant Pena participated in a criminal venture to possess and distribute marijuana.

At trial, the evidence confirmed Defendant Pena's spatial proximity to the marijuana as she was a passenger in the van where the marijuana was located. Something more than Defendant Pena's spatial proximity to the marijuana, however, is necessary to sustain her conviction. See United States v. Gutierrez-Moran, No. 97-2018, 1997 WL 606893 (10th Cir. 1997) (unpublished) (passenger's spatial proximity to marijuana and extreme nervousness insufficient to sustain conviction for possession with intent to distribute). The government must show "some nexus, link, or other connection" between Defendant Pena and the marijuana. United States v. Reece, 86 F.3d 994, 996 (10th Cir. 1996).

In this case the evidence showed that Defendant Pena is the aunt of the van's driver, Defendant Pena-Hernandez. Neither Defendant owned the van used to transport the marijuana. The van was registered in the name of Julian Silva from El Paso, Texas. After Agent Velez stopped the van, Defendant Pena, the passenger in the van, stated that Julian Silva was her stepbrother. Defendant Pena-Hernandez stated the Julian Silva was her uncle. At trial, the government introduced the testimony of Richard Gonzalez, an insurance agent from El Paso, who, according to the insurance documents, had insured Silva. Gonzalez was familiar with both Defendants. He testified that his former secretary

was the daughter of Defendant Pena and the cousin of Defendant Pena-Hernandez. Gonzalez further testified that he had never insured a Julian Silva and that no such insurance policy on the van existed.

We believe that this evidence, viewed in a light most favorable to the government, could cause a reasonable jury to conclude that Defendant Pena willfully associated herself with a criminal venture and sought to made it succeed through some action on her part. United States v. McKneely, 69 F.3d 1067, 1072 (10th Cir. 1995). The van containing the marijuana was fraudulently registered. The evidence linked Defendant Pena to the fraudulent registration. Defendant Pena further lied to Agent Velez about the registration of the van, stating that Julian Silva was her stepbrother. The jury could have reasonably concluded that Defendant Pena's part in the crime was assisting in the fraudulent registration of the instrumentality of the crime.

Standing alone, this may only be evidence of insurance fraud. When combined with her presence in the van with its visibly altered interior and strong odor of detergent, however, we conclude that a reasonable jury could have found Defendant Pena guilty of aiding and abetting Defendant Pena-Hernandez. "While mere presence at the scene of a crime is not sufficient to sustain a conviction, presence is a material and probative factor for the jury to consider. . . . [P]resence in a vehicle loaded with contraband need not be ignored by the jury." United States v. Ortiz-Ortiz, 57 F.3d 892, 895 (10th Cir. 1995). Accordingly, the district court properly denied Defendant Pena's motion for judgment of

acquittal.

AFFIRMED.

Entered for the Court,


Bobby R. Baldock
Circuit Judge