**F I L E D**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

DAVID DEWAYNE ROSS,

    Defendant-Appellant.

No. 99-1212
(D.C. No. 98-CR-305-N)
(District of Colorado)

**ORDER AND JUDGMENT**[*]

Before **MURPHY**, **ALARCÓN**,[**] and **PORFILIO**, Circuit Judges.

    David Dewayne Ross appeals his conviction for conspiracy to possess with intent

to distribute crack cocaine. He was sentenced to imprisonment for nineteen years. He

asserts three claims for reversal and contends the district court erred in sentencing. We

see no errors on the merits but remand for resentencing in light of the absence of evidence

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

[**]The Honorable Arthur L. Alarcón, Senior Circuit Judge for the United States Court of Appeals for the Ninth Circuit, sitting by designation.

or findings to support the district court's conclusion Mr. Ross was subject to the two-level increase under USSG § 3B1.1 and not entitled to a two-level decrease under § 3E1.1.

The conviction of Mr. Ross arises from his dealings with Danielle Smith, a drug user and seller, whose credibility was put to a strenuous test during trial. A recitation of the facts and events of the transactions between the two is of little help, except when necessary to explain our holding on the issues.

Mr. Ross first contends the nine ounces of crack cocaine seized by federal agents should not have been admitted into evidence against him because the discovery of the drug was a result of his illegal detention. This argument is predicated upon his claim of standing under *United States v. Eylicio-Montoya*, 70 F.3d 1158, 1163 (10th Cir. 1995). He asserts his original detention was illegal; therefore, it was only through the avenue of that detention that a nexus between him and the cocaine arose. As a consequence, but for the illegal detention, he could have been able to leave the scene of the offense, severing himself from the arrest of Ms. Smith and the subsequent discovery of the drugs. We find that argument unique but unpersuasive.

In *United States v. Nava-Ramirez*, ___ F.3d ___, No. 99-4123, 2000 WL 368399, at *1 (10th Cir. 2000), we held a defendant may take the tack employed here by Mr. Ross. But, to successfully contest the lawfulness of his own detention and obtain suppression of evidence found in a vehicle in which he had no expectation of privacy, a defendant must first establish he was illegally detained in violation of his Fourth Amendment rights.

*United States v. Shareef*, 100 F.3d 1491, 1500 (10th Cir. 1996).  "The defendant then bears the burden of demonstrating 'a factual nexus between the illegality and the challenged evidence.'"  *Nava-Ramirez*, at *1 (quoting *United States v. Kandik*, 633 F.2d 1334, 1335 (9th Cir. 1980).  Once both showings are made, the burden of going forward shifts to the government to demonstrate the challenged evidence is not the fruit of the proverbial poisonous tree.  That challenge can be met by showing the discovery of the evidence was inevitable; it was discovered through independent means; or it was so attenuated from the illegality that the taint is dissipated.  *Id.*, at *1.

The district court found a Fourth Amendment violation in the arrest of Mr. Ross, and the government has not contested that holding.  Although Mr. Ross believes the holding provides him the required nexus because he would have been able to drive away from the scene, we believe that hypothesis is based on speculation and not on evidence. Moreover, it is significant that shortly after Ms. Smith and Mr. Ross were apprehended, she consented to the search of her car and purse, making the discovery of the drugs inevitable.  We see no error committed by the district court.

Mr. Ross next takes issue with the instruction on aiding and abetting because, as given, it failed to adequately set forth his theory of the case.  His point is the instruction fails to adequately underscore for the jury he was merely present and not a participant with Ms. Smith in the crack cocaine transaction.

To test the merit of such a contention, we look to the instructions as a whole to determine whether they adequately inform the jury on the law. ***United States v. McKneely***, 69 F.3d 1067, 1077 (10th Cir. 1995). Following such a review, reversal is warranted only if the law was incorrectly stated, and the error was prejudicial in light of the entire record. ***Id.***

Because Mr. Ross was charged both as a principal and an aider and abettor, the district court instructed :

> Proof that a defendant may have known about the crime before it was committed, or while it was being committed, is not enough for you to find defendant guilty. Similarly, mere presence at the places where a crime is committed - being in the wrong place at the wrong time - is not enough for you to find a defendant guilty. You can consider mere presence and a defendant's knowledge of a crime in deciding whether the Government has proved that he was an aider and abettor; but, without more, mere presence and knowledge are not enough.

> For you to find a defendant guilty as an aider and abettor, you must be satisfied beyond a reasonable doubt that the defendant intentionally associated himself with the criminal venture, that he participated in it as something that he wished to bring about, that he seek [sic] by his actions to make it succeed.

Mr. Ross proffered an instruction of similar nature but more personalized. The importance he claims for his instruction is that it would have made clear that while he was present when the drug transaction was going on, he had no part of that business.

Understanding his argument, we nonetheless perceive no difference between the instruction tendered and that given. At least, we see nothing that would meet the test for reversibility. The district court's instructions make clear the jury could not convict Mr.

Ross unless it found he acted with knowledge and intent, underscoring mere presence was not enough for conviction. Thus, we cannot say the district court misstated the law or that the variation in verbiage in the two instructions was prejudicial in light of the entire record.

Finally, Mr. Ross challenges the sufficiency of the Government's evidence. Essentially, it is his contention the testimony of Ms. Smith was incredible and does not sustain the verdict. With that as a given, then, he reprises his theme that the only linkage between him and the crime is his mere presence.

We review the record for sufficiency in a light most favorable to the Government and to determine whether all the evidence when taken as a whole would permit a reasonable jury to find a defendant guilty beyond a reasonable doubt. *United States v. Springfield*, 196 F.3d 1180, 1184 (10th Cir. 1999). We also evaluate the inferences arising from the evidence viewed as a whole. The determination of the credibility of the witnesses and the weight of the evidence, however, are matters left strictly to the jury, and its decision on those issues is inviolable. *United States v. Lazcano-Villalobos*, 175 F.3d 838, 834 (10th Cir. 1999).

In light of these limitations, it is evident the conviction of Mr. Ross hangs from the slender thread of the testimony of Ms. Smith. It is equally evident the jury believed that testimony, and it is not within our purview to set aside that belief. The matters to which Ms. Smith testified are certainly sufficient to convict Mr. Ross.

Mr. Ross contests the sentencing court's two-level increase under USSG § 3B1.1 for his role in the offense. He urges the court failed to make specific findings to support his conclusory statements Mr. Ross controlled Ms. Smith. Rather, he insists the record fully establishes Ms. Smith, an active drug dealer before he became involved, had other sources, secured her own buyers, and had another business partner.

To apply a two-level increase under USSG § 3B1.1, the district court "must make specific findings and advance a factual basis." *United States v. Valdez-Arieta*, 127 F.3d 1267, 1269-70 (10th Cir. 1997) (internal quotation marks omitted) (citation omitted). We review the district court's finding Mr. Ross was "an organizer, leader, manager, or supervisor in any criminal activity," § 3B1.1(c), "only for clear error, 'giving due deference to the district court's application of the guidelines to the facts.'" *United States v. Owens*, 70 F.3d 1118, 1127 (10th Cir. 1995) (internal quotation marks omitted) (citation omitted). However, "even if the record overwhelmingly supports the enhancement, appellate fact-finding cannot substitute for the district court's duty to articulate clearly the reasons for the enhancement." *United States v. Ivy*, 83 F.3d 1266, 1292 (10th Cir. 1996) (quoting *United States v. Wacker*, 72 F.3d 1453, 1477 (10th Cir. 1995)).

We have stated "the mere fact that a defendant distributed, delivered, or acted as a source of drugs, without more, 'do[es] not constitute evidence of *decision-making* authority or control over a subordinate necessary to conclude [a defendant] was a

supervisor or manager.'" *United States v. Ivy*, 83 F.3d 1266, 1292 (10th Cir. 1996) (quoting *United States v. Roberts,* 14 F.3d 502, 524 (10th Cir. 1993)) (emphasis in original). Moreover, the Commentary to § 3B1.1 states, "In relatively small criminal enterprises that are not otherwise to be considered as extensive in scope or in planning or preparation, the distinction between organization and leadership, and that of management or supervision, is of less significance."

The district court apparently relied on part of Application Note 4 in the Commentary to § 3B1.1. That note advises that titles, "kingpin" or "boss" are not controlling in determining role. Instead, the sentencing court should look to such factors as "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, *and* the degree of control and authority exercised over others." USSG § 3B1.1, comment. (n.4). (italics added).

The district court considered only the factor of control in making the two-level increase. It stated, "[i]t is clear to me that Mr. Ross did control Ms. Smith. He wasn't the only one who controlled her, but he was involved in bringing cocaine from California. He appears to have had the right to a larger share of the fruits of the crime. And all in all, appears to my satisfaction by a preponderance of the evidence to merit a 2-point adjustment."

This conclusion specifies no factual basis for the increase. That Mr. Ross "controlled [Ms. Smith]" by being "involved in bringing cocaine from California cannot, without more, constitute control." **Roberts,** 14 F.3d at 524. The record establishes a romantic relationship between codefendants, but that relationship alone does not confer management authority on Mr. Ross. **Id.** Absent that fact, the court cited no evidence Mr. Ross organized the venture to satisfy § 3B1.1(c). **Valdez-Arieta**, 127 F.3d at 1272.

Furthermore, the court's conclusion Mr. Ross appeared to "have had a right to a larger share of the fruits of the crime," is unsupported by the record. No cash was found on Mr. Ross at the time of his arrest. The government introduced no evidence at trial to establish how drug proceeds were split or where the proceeds, in fact, went. The mere fact Mr. Ross received profits, according to Ms. Smith's testimony, does not support the enhancement. **Anderson**, 189 F.3d at 1212.[1] Because the record before us supports only the factual finding Mr. Ross was the supplier and source of the cocaine involved in the July 11th and July 24th sales, we hold the district court erred in concluding the two-level increase for a management role was warranted.

In a final effort to reduce his sentence, Mr. Ross contends the court erred in refusing to decrease the offense level of his sentence two levels under USSG § 3E1.1.

---

[1]Indeed, the court stated during sentencing, reflecting upon this being "one of those cases where the government necessarily relied on people who were involved in the drug business," that "where the government has not corroborated [Ms. Smith's] testimony, I do not believe that it is appropriate for me to find by a preponderance of the evidence that a certain fact is true based solely on her testimony."

"Determination of acceptance of responsibility is a question of fact reviewed under a clearly erroneous standard." *United States v. Gauvin*, 173 F.3d 798, 805 (10th Cir. 1999). The Commentary states, "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review." USSG § 3E1.1, comment. (n.5).

Here, the district court simply stated the adjustment was not "intended to apply to a defendant who puts the Government to its burden of proof at trial by denying the essential factual elements of guilt." Mr. Ross contends the conclusion ignores his "rare situation" where he sought to preserve his appellate challenge of the denial of his motion to suppress. He emphasizes although he went to trial, he did not testify nor present witnesses. Thus, he urges, the court's conclusion is without factual foundation.

The Guidelines make clear the choice to proceed to trial "does not automatically preclude a defendant from consideration for such a reduction." USSG § 3E1.1, comment. (n.2). Where defendant exercises his constitutional right to a trial to "assert and preserve issues that do not relate to factual guilt," *id.*, that "rare situation" may provide a basis for the acceptance of responsibility adjustment. "In each such instance, however, a determination that a defendant has accepted responsibility will be based primarily upon pre-trial statements and conduct." USSG § 3E1.1, comment. (n.2). Moreover, conceding

factual guilt does not automatically entitle a defendant to an adjustment for acceptance of responsibility as a matter of right. USSG § 3E1.1, comment. (n.3).

However, the district court failed to make any specific factual findings other than reciting Mr. Ross' proceeding to trial was sufficient to preclude the reduction. Absent those findings, we are thus left with the simple fact Mr. Ross exercised his right to trial to preserve his constitutional suppression issue, an insufficient basis under the Guidelines in light of the court's express discomfort with the reliability of the government's proof.

We therefore **VACATE** Mr. Ross' sentence and **REMAND** for the district court to impose a new sentence without the § 3B1.1 two-level increase and to provide the specific factual basis for denying the two-level decrease under 3E1.1. In all other respects, Mr. Ross' conviction is **AFFIRMED**.

ENTERED FOR THE COURT

John C. Porfilio
Senior Circuit Judge