**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Eloy Horacio DeSOTO, Defendant–Appellant.**

No. 89–2168.

United States Court of Appeals, Tenth Circuit.

Nov. 14, 1991.

**627**

McKAY, Chief Judge.

Defendant Eloy H. DeSoto was indicted on one count of possessing a firearm and ammunition after having been convicted of a crime punishable by imprisonment for a term exceeding one year. The indictment charged defendant with possessing a .9mm pistol and two magazines loaded with sixty rounds of .223 caliber ammunition in violation of 18 U.S.C. § 922(g)(1) (1988). The district court entered a judgment of conviction after a jury returned a guilty verdict. Defendant now appeals his conviction.

### I.

On October 30, 1979, defendant was adjudged guilty of second degree murder in a state court of New Mexico. Nearly nine years later, in September 1988, his wife purchased a .9mm pistol from a gun store in Albuquerque, New Mexico. Defendant accompanied his wife into the gun store. He was not, however, involved in the purchase of the weapon. Instead, he distanced himself from the sales discussion and watched his young son. Mrs. DeSoto arranged the purchase, paid for the pistol, and completed the federal firearm form. At trial, Mrs. DeSoto testified that she bought the pistol for target shooting. In addition, a friend of the DeSoto's testified that he regularly went target shooting with Mrs. DeSoto.

On October 5, 1988, defendant and his wife went to Frontier Ford, an Albuquerque car dealership, to buy a new van. They discussed and ultimately purchased a van from Harry Brown, a Frontier Ford salesman. Mr. Brown's girlfriend, Mydia Lucero, was present at the dealership during the sales discussion. Ms. Lucero testified that she saw defendant in possession of the pistol charged in the indictment, or one identical to it. She also testified that she overheard defendant offer to sell guns to Mr. Brown. Defendant and his wife denied having a gun with them. They claimed that Ms. Lucero saw a toy gun

Susan L. Foreman, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on the briefs), Denver, Colo., for defendant-appellant.

James Murphy, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., and Robert J. Gorence, Asst. U.S. Atty., on the briefs), D.N.M., Albuquerque, N.M., for plaintiff-appellee.

Before McKAY, Chief Judge, ANDERSON, Circuit Judge, and BROWN, District Judge.[1]

1. Honorable Wesley E. Brown, Senior United States District Judge for the District of Kansas, sitting by designation.

their son had taken with him to Frontier Ford.

On October 30, 1988, the Chief of Police of Grants, New Mexico, went to defendant's home in response to a report that gunshots had been heard in the vicinity. Defendant, apparently anticipating his arrival through the use of a radio police scanner, met the Chief in his front yard. Defendant invited the Chief into the house to demonstrate that he possessed no weapons. The Chief of Police saw a plastic bag containing .223 caliber ammunition in the kitchen.

Officials from the United States Bureau of Alcohol, Tobacco, and Firearms searched defendant's home on November 1, 1988, pursuant to a warrant. The officials seized a loaded .9mm pistol located behind a wall inside defendant's garage. Officials also seized two magazines of .223 caliber ammunition underneath the bed used by defendant and his wife. In addition, they found spent .223 caliber rounds in the basement and inside a sofa, as well as empty boxes for AR-15 and AK-47 assault rifles.

Defendant denied possessing the firearm and ammunition charged in the indictment. Mrs. DeSoto testified that the pistol was hers, that she used it for target shooting, and that defendant never possessed it. She also testified that she had placed the pistol on top of a sheetrock ledge in the garage and that it had fallen behind the sheetrock where she was unable to retrieve it.

Defendant makes several arguments that he contends warrant reversal of his conviction. We treat only two of those issues which we consider controlling. First, he argues that he was denied his sixth amendment right to cross-examine a prosecution witness and was thereby precluded from exposing the witness's motive for testify-

ing falsely. Second, defendant contends the district court erred by refusing one of his tendered instructions.

## II.

At trial, Ms. Lucero, the girlfriend of the Frontier Ford salesman who sold a van to the DeSotos, testified that she saw defendant in possession of the pistol charged in the indictment, or one identical to it. During cross-examination, defense counsel sought to impeach her credibility by establishing her motive for testifying falsely. Counsel attempted to show that defendant had accused her boyfriend of embezzling the DeSoto's $10,000 down-payment on the van, and that she was lying in order to retaliate for the accusation.[2]

Defense counsel endeavoured to impeach the witness by asking the following three questions: "How long had Harry Brown been working at Frontier Ford?"; "Now, do you still have a relationship with Mr. Brown, Harry Brown?"; "Are you aware of a dispute between Mr. Brown and Mr. DeSoto?" Record, vol. 4, at 179–82. The prosecution objected to each of these questions on the basis of relevancy. The district court sustained the objections.

Defense counsel then made the following proffer outside the presence of the jury:

DEFENSE COUNSEL:—the proffer would be that Ms. Lucero's boyfriend, Harry Brown, is involved in a dispute over—wherein Mr. Brown has been accused by Mr. DeSoto of embezzling ten thousand dollars in these transactions involving the sale of that van.

We would submit in a conversation at which Mrs. DeSoto was present last week when I was talking with Mr. Brown, Mr. Brown testified, this is my way of getting back at DeSoto for saying I stole ten thousand dollars.[3] Ms. Luce-

---

2. The accusation of embezzlement stemmed from a civil complaint brought by Frontier Ford against Mrs. DeSoto. In the complaint, Frontier Ford petitioned for replevin of the van based on fraud and breach of contract. Frontier Ford claimed that it had agreed with Mrs. DeSoto to cancel their contract for the van's purchase, but that Mrs. DeSoto refused to return the van despite the fact that she had retrieved the car used

as a trade-in. It appears that Mrs. DeSoto refused to return the van because of a claimed $10,000 down-payment the DeSoto's made to Mr. Brown pursuant to their purchase negotiations.

3. Defense counsel was referring to Mr. Brown's testimony at a pre-trial hearing on defendant's motion to suppress. In his proffer, defense

ro's allegiance with Mr. Brown, and the fact that the dispute is relevant evidence of a bias on Ms. Lucero's part and a motive to see Mr. DeSoto get in trouble. It's prejudicial that I could not cross examine her on that dispute, because aside from the other testimony which I'll address in my motion, this is the only direct evidence of Mr. DeSoto at all handling or having any control or possession over that weapon.

She's a very important witness and I should have been allowed to have cross examined her on her motive and her involvement in the entire set of circumstances involving Mr. DeSoto and Mr. Brown.

THE COURT: All right. Well, the reason I denied that is you did not address anything of that nature to Ms. Lucero, that you were asking questions about her with Mr. Brown. And I think I heard some of this matter before at the motion to suppress.

But at no time was there any indication that Ms. Lucero was involved in any way, and indeed, this is the first time I've seen her on the witness stand, and she testified that this is the only time she ever met Mr. DeSoto and she never saw him before or since.

And so I do not see how you could show bias by the fact that at one time she had some type of relationship with Mr. Brown, and I think it's too attuniated [sic], in any event, and so I will sustain— or at least I will reaffirm my ruling on the basis of lack of relevancy.

I almost allowed it in, until I realized there was nothing that had been developed regarding this witness' bias. Now, if you had Mr. Brown here, that might have been something else.

That'll be the Court's ruling.

Record, vol. 4, at 185–86.

Defendant argues that the district court deprived him of his sixth amendment right to confront the witnesses against him by limiting his cross-examination of Ms. Luce-

ro such that he was precluded from demonstrating her bias and motive for testifying against him.

The confrontation clause of the sixth amendment guarantees defendants in criminal cases the right "to be confronted with the witnesses against" them. Its main purpose is to provide defendants with the opportunity for effective cross-examination. *Davis v. Alaska,* 415 U.S. 308, 315–16, 94 S.Ct. 1105, 1109–10, 39 L.Ed.2d 347 (1974), *quoting* 5 J. Wigmore, *Evidence* § 1395 p. 123 (3d ed. 1940). One of the most important aspects of the right of cross-examination is attacking the witness' credibility and the truth of the testimony. *Id.* at 316, 94 S.Ct. at 1110. Credibility may be tested by interrogation that attempts to reveal possible biases, prejudices, or ulterior motives. *Id.*

■ Defense counsel should ordinarily be given wide latitude when cross-examining a witness about credibility or bias. *United States v. Haro,* 573 F.2d 661, 667 (10th Cir.), *cert. denied,* 439 U.S. 851, 99 S.Ct. 156, 58 L.Ed.2d 155 (1978). Counsel should be allowed "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis,* 415 U.S. at 318, 94 S.Ct. at 1111; *see also Delaware v. Fensterer,* 474 U.S. 15, 22, 106 S.Ct. 292, 295–96, 88 L.Ed.2d 15 (1985) ("the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to prove and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony"). The trial court, however, retains discretion to reasonably limit cross-examination to prevent, among other things, questioning that is repetitive or of marginal relevance. *Delaware v. Van Arsdall,* 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986).

■ In this case, the district court ruled that the cross-examination was irrelevant.

---

counsel submitted that Mr. Brown tried to get revenge for defendant's allegations of embezzlement by testifying that he had filed a report

with the police stating that the trade-in vehicle had been stolen, thereby implying that the De-

Questions properly directed at revealing bias are, however, a permissible basis of impeachment, and are relevant and admissible. *United States v. Abel,* 469 U.S. 45, 50–51, 105 S.Ct. 465, 468–69, 83 L.Ed.2d 450 (1984).[4] The issue before us, therefore, is whether the questions asked during cross-examination were relevant in terms of showing Ms. Lucero's possible bias against defendant. We conclude that they were.

■ Contrary to the remarks of the district court, defense counsel's questions were aimed at revealing that Ms. Lucero was Mr. Brown's girlfriend, and that Mr. Brown was involved in a dispute with defendant in which defendant accused him of embezzling the $10,000 down-payment on the van. Similarly, the district court erroneously concluded that Ms. Lucero's relationship with Mr. Brown was too attenuated to demonstrate a motive for testifying against defendant. Had counsel been allowed to explore this issue, the jury could have reasonably inferred that she was loyal to Mr. Brown and that her testimony was in retaliation for defendant's accusation against him. At the least, this line of questioning would have cast doubt on her credibility by exposing a motive for her to slant her testimony against defendant.

The government argues that defendant was not prohibited from engaging in *appropriate* cross-examination because the cross-examination called for inadmissible hearsay in the form of Mr. Brown's testimony at the pre-trial hearing on defendant's motion to suppress. *See Davis,* 415 U.S. at 318, 94 S.Ct. at 1111. The specific questions put to Ms. Lucero did not, however, call for her to respond with out-of-court statements. In addition, the district court sustained the government's objections on the grounds of relevancy, not hear-

say. Thus, the government's argument is inappropriate.[5]

We conclude that defense counsel's questions were sufficiently probative of Ms. Lucero's possible bias against defendant to warrant allowing such interrogation. Defendant was therefore denied the opportunity to reveal to the jury the facts from which they could draw inferences about Ms. Lucero's reliability. *See id.* The district court's curtailment of cross-examination deprived defendant of his sixth amendment right of confrontation.

■ Not all constitutional errors, however, require automatic reversal of a conviction. *Chapman v. California,* 386 U.S. 18, 22, 87 S.Ct. 824, 827, 17 L.Ed.2d 705 (1967). "[I]f the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other errors that may have occurred are subject to harmless error analysis." *Rose v. Clark,* 478 U.S. 570, 579, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986). The harmless-error doctrine recognizes that the main purpose of criminal trials is to decide the defendant's guilt or innocence, and it focuses on "the underlying fairness of the trial rather than on the virtually inevitable presence of immaterial error." *Van Arsdall,* 475 U.S. at 681, 106 S.Ct. at 1436. In applying harmless-error analysis, we must determine whether the error, assuming the damaging potential of the improperly curtailed cross-examination was fully realized, was harmless beyond a reasonable doubt. *Id.* at 684, 106 S.Ct. at 1438. Among the factors that we consider are "the importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination oth-

---

Sotos had stolen the trade-in from Frontier Ford.

**4.** At common law, bias is defined as a relationship between a witness and a party which might cause the witness to slant his testimony for or against the party. *Abel,* 469 U.S. at 52, 105 S.Ct. at 469.

**5.** The government also argues that defendant manufactured the error of which he complains

by opting not to call Mr. Brown to the stand to attempt to discredit Ms. Lucero. This position misses the thrust of defendant's argument—that *he was denied his right to confront Ms. Lucero* through cross-examination. Whether defendant chose to call Mr. Brown as a defense witness is not responsive to the issue of whether he was deprived of his constitutional right to cross-examine Ms. Lucero.

erwise permitted, and of course, the overall strength of the prosecution's case." *Id.*

Ms. Lucero's testimony was particularly important to the prosecution's case. She testified that defendant had actual possession of the pistol charged in the indictment. She was the only witness to so testify. None of the other witnesses corroborated Ms. Lucero's statements that she saw defendant holding a .9mm pistol or that defendant offered to sell guns to Mr. Brown. Rather, defendant and Mrs. DeSoto directly contradicted her version of the events at Frontier Ford. In addition, defendant did not have sufficient opportunity to pursue Ms. Lucero's motives and bias in other cross-examination. *Cf. Graham v. Wilson,* 828 F.2d 656, 660 (10th Cir.1987), *cert. denied,* 484 U.S. 1069, 108 S.Ct. 1035, 98 L.Ed.2d 999 (1988). Questioning was limited to impeaching Ms. Lucero's ability to accurately perceive the pistol allegedly held by defendant.

Finally, absent Ms. Lucero's testimony, the prosecution's case was not especially strong. Because she was the only witness to testify as to actual possession, the rest of the prosecution's case attempted to demonstrate that defendant had constructive possession of the .9mm pistol and ammunition charged in the indictment. The evidence showed that the pistol was located behind a sheetrock wall in the DeSoto's garage, and that ammunition was found under their bed. Although the jury might infer that defendant had the power and intent to exercise control over the pistol and ammunition, the evidence on constructive possession was not substantial. Accordingly, we are unable to conclude that the improper limitation of defendant's cross-examination constituted harmless error beyond a reasonable doubt.

### III.

Defendant's next argument is that the district court committed reversible error when it refused his tendered instruction on his theory of defense. The government maintains that the jury instructions, when taken as a whole, were correct and adequately covered the issues presented.

Defendant's theory of the case was that he had neither actual nor constructive possession of the pistol and ammunition charged in the indictment. Instead, he contended that his wife owned these items and exclusively possessed them. Defendant's tendered Instruction No. 5 stated: "Defendant's wife has a constitutionally secured right to keep and bear arms. There is no law prohibiting the spouse of a convicted felon from possessing a weapon." Record, vol. 1, doc. 11. The district court rejected the instruction after deciding that Mrs. DeSoto's right to bear arms was a "false issue" that had "absolutely no bearing in this case." Record, vol. 4, at 260.

Although a defendant is entitled to an instruction on his theory of defense, "a trial judge is given substantial latitude and discretion in tailoring and formulating the instructions so long as they are correct statements of the law and fairly and adequately cover the issues presented." *United States v. Pack,* 773 F.2d 261, 267 (10th Cir.1985). A criminal defendant is not entitled to any particular wording of instructions. *United States v. Bryant,* 892 F.2d 1466, 1468 (10th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3220, 110 L.Ed.2d 667 (1990). When analyzing a challenge to jury instructions, "we review the record as a whole to determine whether the instructions 'state the law which governs and provided the jury with an ample understanding of the issues and the standards applicable.'" *Big Horn Coal Co. v. Commonwealth Edison Co.,* 852 F.2d 1259, 1271 (10th Cir.1988), *quoting Ramsey v. Culpepper,* 738 F.2d 1092, 1098 (10th Cir.1984). In addition, we "consider all that the jury heard and, from the standpoint of the jury, decide 'not whether the charge was faultless in every particular but whether the jury was misled in any way and whether it had understanding of the issues and its duty to determine these issues.'" *Durflinger v. Artiles,* 727 F.2d 888, 895 (10th Cir.1984), *quoting Alloy Int'l Co. v. Hoover–NSK Bearing Co.,* 635 F.2d 1222, 1226–27 (7th Cir.1980). We reverse the judgment of the district court only if the error is prejudicial in light of these consid-

erations. *United States v. Cardall*, 885 F.2d 656, 673 (10th Cir.1989).

■ Although defendant's tendered instruction would have specifically informed the jury that his wife was allowed to possess a firearm, defendant does not contend that the jury was incorrectly instructed on actual and constructive possession. Indeed, the instructions submitted to the jury accurately set forth the legal standards for actual and constructive possession. Given that defendant's theory of the case was to show that he had neither actual nor constructive possession of the firearm and ammunition, and that the jury was properly instructed on this theory, we conclude that the district court did not abuse its discretion in refusing defendant's tendered instruction.

■ Defendant also contends that the district court erred when it submitted Instruction No. 11 to the jury. The instruction stated:

> *The defendant's motive for the acquisition of a firearm or ammunition is not material to the issue before you.* Whether the firearm or ammunition was sold or acquired for his own use or for that of another is not material, and would not constitute a defense to the charges made in this case if all of the essential elements as set out in these instructions have been proved.

Record, vol. 4, at 295–96. (emphasis added).

Defendant argues that the instruction was improper because it assumed that he acquired a firearm and that he, therefore, must have possessed it. We agree. It is likely that the jury was misled to think that defendant "acquired" the .9mm pistol charged in the indictment. Although the instruction stated that defendant's motive for acquiring a firearm is not a defense if all the essential elements of the charge have been proved, the jury would probably interpret the instruction to mean that defendant acquired the firearm and that he therefore must have knowingly possessed it, thereby satisfying the central and disputed element of the offense. We conclude, therefore, that defendant was prejudiced by the erroneous instruction.

The government cites two cases to support its proposition that Instruction No. 11 was appropriate. *See United States v. Hammons*, 566 F.2d 1301 (5th Cir.1978); *United States v. Cornett*, 484 F.2d 1365 (6th Cir.1973). Although both *Hammons* and *Cornett* involved previously convicted felons charged with possessing a firearm, they are inapposite to the issue we address here. In *Hammons*, defendant admitted receiving the firearm, but alleged that he did so only to protect his friend's girlfriend. The judge refused to give a requested instruction on this theory of defense, and instructed the jury to disregard defendant's motive for receiving the gun. Similarly, in *Cornett*, the defendant did not dispute that he purchased a gun. Instead, he argued that he bought it for his brother and not for himself. The Sixth Circuit Court of Appeals affirmed the trial judge's refusal to admit evidence on defendant's motive as a defense.

By contrast, defendant DeSoto vigorously denied that he possessed the pistol. Further, his theory of defense was not that his alleged firearm possession was justified or excused. Thus, unlike *Hammons* and *Cornett*, Instruction No. 11 incorrectly assumed that defendant acquired a firearm. Because we reverse and remand this case for a new trial based on the violation of defendant's sixth amendment right, the district court is directed to formulate instructions that do not mislead the jury to assume that defendant acquired a firearm.

This case is REVERSED and REMANDED for a new trial.